### PEDRO v. PEDRO et al.

(Supreme Court, Special Term, New York County.   March 9, 1911.)

1. INFANTS (§ 31*)—DEED OF TRUST—AVOIDANCE.

An infant, executing a deed of trust for his benefit, may disaffirm it on reaching his majority, provided he exercises the right seasonably.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 46, 50–63; Dec. Dig. § 31.*]

2. INFANTS (§ 30*)—DEED OF TRUST—RATIFICATION.

An infant executed a deed of trust for his benefit.   For a year after attaining full age he received the interest from the trustee in ignorance of his right to disaffirm the deed, but he accepted no income to which he was not entitled, regardless of the deed.   *Held* not to show a ratification of the deed after attaining full age.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 41–49, 54, 55; Dec. Dig. § 30.*]

3. INFANTS (§ 57*)—CONTRACTS—RATIFICATION.

Any written instrument signed by a party, which in case of adults amounts to an adoption of an act of an agent, will in the case of an infant who has attained full age amount to a ratification.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 136–148, 151; Dec. Dig. § 57.*]

4. INFANTS (§ 29*)—CONTRACTS—AVOIDANCE—"ESTOPPEL BY DEED."

An infant executed a deed of trust for his benefit.  ·On learning, after attaining full age, that he could disaffirm it, he brought suit therefor. Pending the suit, his counsel advised him that the deed could be revoked by consent of the parties thereto.   The trustee resigned, and by virtue of the power the infant designated a substituted trustee, and the infant, his father, and the substituted trustee entered into an agreement annulling the deed.   Subsequently, on learning that the revocation was not effective, the infant brought a second suit to disaffirm the first deed.   *Held*, that he was not estopped by the subsequent instrument from maintaining the suit; its object being to invalidate the first deed, and an "estoppel by deed" being a preclusion against competent parties to a valid sealed contract and their privies to deny its force by any evidence of inferior solemnity.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 37–40; Dec. Dig. § 29.*

For other definitions, see Words and Phrases, vol. 3, p. 2496.]

Action by Juan Bautista Pedro y Varona against Juan Bautista Pedro y Baro and others.   Judgment for plaintiff.

Greene, Hurd & Stowell (George F. Hurd, of counsel), for plaintiff.
Solomon Hanford, for defendant Hinckley.
Francis B. Sanford, for defendant Carmen Monteverde de Pedro, individually and as trustee, etc.
Henry B. Pogson, for defendant Lucy Lacoste de Pedro.
Strong, Smith & Strong (Leonard B. Smith, of counsel), for Aldina Monteverde, guardian ad litem of defendant Alexina Monteverde de Pedro.

LEHMAN, J.   The plaintiff seeks to disaffirm a deed of trust executed by him in the year 1906, while he was still an infant.   The plaintiff is a native of the island of Cuba.   Under the will of his grandmother, who died in the year 1902, he was entitled to a legacy of about

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

$100,000. By the Cuban law the plaintiff would be entitled to the legacy only when he arrived at the age of 23, or was previously emancipated by his father, or married with his father's consent. If he married without his father's consent, he would become entitled to so much of the income as would provide for his proper support, taking into consideration his social standing, manner of education, etc. The plaintiff, previous to September, 1906, had attended Cornell University for two years. In that month he informed his father that he was about to marry. A quarrel arose between father and son over his approaching marriage, and the father said that he would not give the son another cent, and that the boy would starve unless he would consent to putting the legacy from his grandmother in trust, in which case he would receive the income therefrom. The plaintiff thereupon married and joined in the execution of the indenture of trust.

While, in view of the evident inexperience and extravagant tendencies of the plaintiff, his interests would perhaps be best subserved if he would to-day ratify the trust and place the corpus of his estate beyond his own reach, this question is not before me. The indenture was executed while the plaintiff was an infant under the laws of both New York and Cuba, and he had a right to disaffirm the deed when he reached his majority. There is no limitation upon this right, if seasonably exercised. As soon as he became an adult, he and not the court had a right to determine whether or not the contract was beneficial to him. The sole question which I have to decide is whether or not the plaintiff, either by acquiescence or by affirmative acts, ratified the contract.

The testimony as to the residence of the plaintiff is not entirely satisfactory, but for the purposes of this case I have accepted the view most unfavorable to the plaintiff—that he was at the time that the indenture of trust was executed and still is a resident of New York, and that he reached his majority on September 6, 1907. For a year thereafter he did not disaffirm the deed and received the interest from the trustee. In view, however, of the fact that he did not know that he was entitled to disaffirm, and that he accepted no income to which he was not unquestionably entitled under the laws of this jurisdiction, and which he would have obtained under the laws of Cuba, regardless of the deed of trust, such delay certainly constituted no ratification.

In September, 1908, while a divorce suit was pending between his wife and himself, he learned of his right to disaffirm, and thereafter promptly started proceedings for this purpose. If this suit had come to trial, I believe that the plaintiff would have been unquestionably entitled to a judgment in his favor. Before it was tried the plaintiff, who had then remarried, was advised by his counsel that the deed of trust could be revoked by consent of the parties to the original deed. The trustee under that deed objected to taking the responsibility of consenting, and resigned his trust; and by virtue of a power contained in the original deed the plaintiff designated his wife as substituted trustee, and the plaintiff, his father, and the wife entered into an agreement annulling the original deed and the equitable action was discontinued. Thereafter it became evident that the revocation by consent was not effective, and the plaintiff has brought this action.

All the parties are satisfied to allow the avoidance of the original deed except the guardian ad litem for plaintiff's infant child. She urges that the instrument designating the trustee was specifically made "in obedience to the terms" of the instrument which plaintiff now seeks to avoid, and therefore constitutes ratification of that instrument. While I cannot agree with this contention, at first glance it seems to have considerable force. "Any written instrument, signed by the party, which, in case of adults, would have amounted to the adoption of the act of a party acting as agent, will, in the case of an infant who has attained his majority, amount to a ratification." Henry v. Root, 33 N. Y. 526, at page 549.

In this case, however, it appears undisputed that the second instrument was executed only for the purpose of providing an easy method of avoiding the earlier instrument by substituting a willing trustee for an unwilling one. It was executed and delivered simultaneously with a specific revocation of the earlier instrument. It was intended to be effectual only to render the revocation valid. The ratification by the infant after he has attained his majority depends upon his intention, and he never intended to ratify or to gain any advantage under the first instrument after attaining his majority. It is immaterial whether or not this court could set aside the second instrument because it was executed under a mistake of law. Its validity depends upon the validity of the prior instrument in obedience to the terms of which this instrument was made.

Nor does any estoppel arise by virtue of its terms, as estoppel by deed has been defined as "a preclusion against the competent parties to a valid sealed contract and their privies to deny its force and effect by any evidence of inferior solemnity." Bigelow on Estoppel (5th Ed.) p. 332. Where the sealed instrument is specifically and in terms made under a power given under an earlier deed of trust, and creates no new rights in the cestuis que trustent, and merely designates a new trustee, who joins in the prayer that the deed of trust be declared void, it certainly cannot be held that the new instrument estops the maker from showing that the prior instrument was invalid. Its sole effect must be on the question of ratification, and where, simultaneously with the instrument, a revocation of the prior deed of trust was executed, I am constrained to hold that there has been no ratification.

Upon the question of costs I find that the original trustee and the infant defendant have been made parties to the action without fault of their own, and should receive costs as against the plaintiff. While the case is one in which an extra allowance may properly be allowed, I do not find that the trustee should receive any considerable extra allowance. He had resigned his trust and was no longer interested in any question as to its validity. The only purpose in making him a party, and the only prayer for relief against him, is to obtain from him valid transfers of securities received by him as trustee. While it is probable from the testimony that he has made such transfers, he has not seen fit to put in any evidence as to their form. It seems to me that I cannot now conclusively hold that these assignments were sufficient to transfer full title; nor do I believe that he can be injured by an order to transfer such securities as have not been al-

ready properly transferred by him. I feel·that an extra allowance of $100 is as much as I have a right to allow under these circumstances.

The attorney for the guardian ad litem has been obliged to study the intricate questions of law, and by his clear statement of the points involved has assisted me in arriving at a determination. I find that he is entitled to an extra allowance of $400. Costs, but no allowance, are granted to the attorney for Carmen Monteverde de Pedro.